IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
TENNESSEE EASTERN DIVISION AT
JACKSON

**STATE FARM FIRE AND CASUALTY COMPANY**

    Plaintiff,

v.

**BECK'S BRANCH, INC.;
RIVER BREEZE ESTATES
ASSOCIATES, LLC;** *et al.*,

    Defendants.

Case No. 15-1251

**ORDER DENYING MOTION TO DISMISS, STAYING CASE,
AND ADMINISTRATIVELY CLOSING**

*I. INTRODUCTION*

This is a declaratory judgment action brought on October 7, 2015, by Plaintiff, State Farm Fire and Casualty Company ("State Farm"). (Docket Entry ("D.E.") 1.) Plaintiff, seeks to be relieved of the obligation to furnish legal counsel and/or indemnification to the Defendants, Beck's Branch, Inc., River Breeze Estates Associates, LLC, Riverbreeze at Becks Branch Homeowner's Association Inc, River Breeze Estates Homeowners Association, River Breeze Estates at Beck's Branch Homeowners Association, Inc., Jeff Cox, DLPJW, LLC, Richard Glenn Rutherford, Jr., and Myra Rutherford (collectively referred to as the "River Breeze Defendants"), in a pending state lawsuit brought by co-Defendants, Larry Dean Massey, Jr.; Larry B. Sanders, Sr.; and Douglas S. Swanson (collectively referred to as the "Homeowners"). State Farm seeks the following

declarations: 1) that no insurance coverage is afforded under the policy, number 42-BK-5035-5 issued to Myra and Glenn Rutherford, for the state court lawsuit pending in the Decatur County (Tennessee) Chancery Court, docket number 14-CV-396; 2) that no insurance coverage is afforded under the policy, number 92-KT4900-1 issued to River Breeze Estates Homeowners Association, in the state action; 3) as to the legal relationship between State Farm and the River Breeze Defendants by reason of the insurance policies; and 4) for an award of the costs of this federal suit. This Court's jurisdiction is premised on complete diversity between the parties and the amount in controversy exceeding $75,000. (D.E. 1 ¶ 16.)

Before the Court is the River Breeze Defendants' November 23, 2015 motion to dismiss, or in the alternative, to stay proceedings pending the outcome of the state action. (D.E. 25-1.) Plaintiff has responded in opposition to the motion (D.E. 30).

## II. FACTS ALLEGED

The following facts are adduced from the pleadings. The Homeowners brought claims in the state court lawsuit related to a real estate development in Decatur County known as River Breeze.[1] The River Breeze Defendants allegedly engaged in an elaborate scheme to defraud the Homeowners by using fraudulent sales tactics; artificially inflating the price of the subdivision lots; inducing Homeowners to take out over-valued mortgages; breaching a fiduciary duty owed to the Homeowners; converting monies owed—in part—to the Homeowners; and using the county recording system to perpetrate fraud and coerce payment of homeowners' association ("HOA") dues.

---

[1] The Homeowners alleged breach of covenants, slander of title, intentional and negligent misrepresentation, breach of fiduciary duty, and fraudulent nondisclosure and seek declaratory and injunctive relief, punitive damages, and attorney's fees.

State Farm, at various times between 2006 and the present, insured some of the River Breeze Defendants under a Personal Liability Umbrella Policy (the "PLUP"), issued to Glen Rutherford and Myra Rutherford, and under a Condominium/Association Policy (the "Policy"), issued to River Breeze Estates HOA. Pursuant to the Policy, State Farm insured the HOA and others for liability resulting from bodily injury, property damage, and personal or advertising injury, subject to the terms, conditions, and exclusions of the policy. The Policy also covered damages for which the insureds might become legally obligated due to "wrongful acts," defined as "any negligent acts, errors, omissions or breach of duty directly related to the operations" of the HOA. (D.E. 1-3 at 29). The Policy specifically excludes coverage for any "dishonest, fraudulent, criminal or malicious act." *Id.*

### *III. ALLEGATIONS OF THE PARTIES*

State Farm contends that the nature of the claims against the River Breeze Defendants excuses its duty to provide them a legal defense and/or indemnity. (D.E. 1) Plaintiff also maintains that the costs required to comply with the requested injunctive and non-monetary relief are not covered. *Id.*

In thier motion to dismiss, the River Breeze Defendants request that the Court decline to exercise its discretionary jurisdiction over this action. They aver that the lawsuit is premature because (1) the underlying state action asserts numerous grounds of liability, at least some of which affect the coverage provisions of the subject policies; and (2) the issue of indemnification hinges on disputed facts, which necessarily will be decided in the underlying state action. The instant lawsuit, they contend, should be dismissed, or in the alternative, stayed and administratively closed pending the outcome of the Chancery litigation. Plaintiff counters that it should not be required to wait an

3

unreasonable period for a resolution in the state case, after which, it insists it would be forced to either file an indemnity action against its insureds or to be sued by them.

*IV. JURISDICTION*

A federal district court has original jurisdiction over any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1) (2015). In actions seeking declaratory or injunctive relief, the party asserting jurisdiction must establish that the litigation's value, more likely than not, exceeds $75,000. *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). The jurisdictional threshold has been sufficiently pleaded here.

However, even when the jurisdictional requirements are met, district courts have discretionary jurisdiction in declaratory judgment actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Title 28, section 2201 of the United States Code provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . [and] any such declaration shall have the force and effect of a final judgment or decree . . . .

28 U.S.C. § 2201 (2015) (emphasis added). In *Wilton*, the United States Supreme Court stated,

> "[t]here is . . . nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

515 U.S. at 288 (citations omitted) (quoting E. Borchard, Declaratory Judgments 312-314 (2d ed. 1941)). Thus, this Court has discretion when deciding whether to consider a complaint for declaratory judgment. *See Able Cartage, Inc. v. Strategic Outsourcing, Inc.*, No. 1:04-1039-T-AN, 2005 WL 2333924, at *5 (W.D. Tenn. Sept. 6, 2005); *see also Wilton*, 515 U.S. at 282 ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . , even when the suit otherwise satisfies subject matter jurisdictional prerequisites."); *A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961) ("Declaratory judgment is a remedy committed to judicial discretion."); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447 (6th Cir. 1991) (same).

## V. ANALYSIS

The Sixth Circuit has adopted a five-factor test for district courts when determining whether jurisdiction should be assumed over a declaratory judgment action:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *see also AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (finding the district court's assumption of jurisdiction over a declaratory action to be an abuse of discretion). The Sixth Circuit has stated that declaratory judgment actions "should

5

normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). Nevertheless, there is no per se rule that prevents the exercise of jurisdiction in such a case as the present one. *Am. Modern Home Ins. Co. v. Daniel*, No. 1:01-CV-206, 2003 WL 21920939, at *1 (E.D. Tenn. June 30, 2003). Thus, the Court must consider the aforementioned factors to ascertain whether invoking jurisdiction over this declaratory action would be proper.

1.

As to the first factor, it appears that this action would not settle the entire controversy. The Sixth Circuit has stated that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Bituminous Cas. Corp.*, 373 F.3d at 812-13. This is applicable here. The declaratory action requires that the Court decide whether the nature of the allegations against the River Breeze Defendants negates State Farm's obligations under the insurance policies. (D.E. 1 at 16.) However, a mere allegation of wrongdoing is insufficient to forfeit the protection of bargained-for insurance coverage. The fact-finder would be required, at a minimum, to determine whether the River Breeze Defendants indeed engaged in some of the wrongdoing of which they are accused.

Thus, resolution of the controversy hinges on whether the River Breeze Defendants committed intentionally wrongful acts—a fact-based question of state law. However, when this declaratory action was filed, the question of wrongdoing was already being considered in a separate state court proceeding. (D.E. 1-7). To rule on the questions presented, both this Court

6

and the Decatur County Chancery Court would have to address largely similar, if not identical, issues. Regardless of any decision rendered by this Court, the parties will relitigate some of the same issues in the state action. (*See id.* at 31-42.) This Court's decision would be rendered merely advisory as to one of the central issues—i.e. wrongdoing on the part of the River Breeze Defendants. Accordingly, the Court finds that this first factor weighs heavily against the present exercise of jurisdiction.

2.

The second factor, whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue, weighs similarly against the exercise of jurisdiction at this time. "The 'useful purpose' served by [a] declaratory judgment action is the clarification of legal duties for the future . . ." *Dale*, 386 F.3d at 786. Plaintiff argues that *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 550 (6th Cir. 2008) and *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448 (6th Cir. 2003), support the proposition that this Court should exercise jurisdiction over this action. Both cases are appeals from grants of summary judgment in favor of the insurance company where the Sixth Circuit upheld the district courts' decision to exercise jurisdiction. *Flowers*, 513 F.3d at 570; *Stewart Title Guar. Co.*, 327 F.3d at 459. However, in neither case did the central issues of the declaratory judgment action also go to the heart of the underlying complaint. *Flowers*, 513 F.3d at 550-51; *Stewart Title Guar. Co.*, 327 F.3d at 450-51. These cases demonstrate the broad discretionary power given to the district courts to decide whether their exercise of jurisdiction is warranted. They do not conclusively establish that the Court should exercise jurisdiction over this action. *Cf. World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir.

2014) (upholding a district court's exercise of declaratory jurisdiction because none of the factual issues pertaining to the insurance coverage were disputed).

In the instant case, it is doubtful that resolution of the declaratory action in this Court would serve a useful purpose. The key facts, at this stage, are disputed; however, they are set to be resolved by the Chancery court. Thus, the present usefulness of the declaratory judgment action is questionable, and the Court finds that this factor weighs against the exercise of jurisdiction.

3.

The third factor requires the Court to determine whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." *Dale*, 386 F.3d at 785. It is unclear what effect an action in this Court would have on the state action. Upon examination of the pleadings, it does not appear that this case presents the appearance of a race for a binding decision. In fact, the Homeowners acknowledge that no improper motive is evident, and the Court is inclined to give State Farm the benefit of the doubt as to the reasons for filing this action. (D.E. 25-1 at 7.) Accordingly, the third factor does not weigh against the Court's present exercise of jurisdiction.

4.

The fourth factor requires consideration of the principles of federalism and the potential for conflict between state and federal courts. In determining whether the exercise of jurisdiction would increase the friction between the federal and state courts, the Sixth Circuit has outlined three factors for consideration: 1) whether the underlying factual issues are important to an informed resolution of the case; 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3) whether there is a close nexus between the underlying factual and legal

issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action. *Liberty Mut. Fire Ins. Co. v. Bohms*, 490 Fed. App'x 721, 726 (6th Cir. 2012) (quoting *Bituminous Cas. Corp.*, 373 F.3d at 814-15). As to the first, in *Roumph*, the Sixth Circuit held that district court properly abstained from exercising jurisdiction over a declaratory judgment action where a liability insurer sought to determine the effect of a sexual misconduct endorsement contained in the insurance policy on a pending state action. 211 F.3d at 968. The relevant facts were not in the record at the time of the declaratory action, the issue on insurance coverage was one of state law, and the facts of the misconduct were integral to the state law action. *Id.* Such is the case here. The first sub-factor weighs against the present exercise of jurisdiction.

As to the second, State Farm asks this Court to decide the legal obligations of parties within the parameters of the insurance policies, as regulated by Tennessee Code Annotated sections 56-1-101 to 56-61-125, and shaped by the facts. This question could be considered through a declaratory judgment action either by this Court or by the state courts. *See* Tenn. Code Ann. §§ 29-14-101 to -113. The Tennessee state court system is equally equipped to decide such matters of Tennessee law; however, it is the Decatur County Chancery Court that will be developing the full factual record in the course of its proceedings. For this Court to essentially duplicate the work of the Chancery Court, either before or afterward, and exert jurisdiction over such a case at this point would be to unnecessarily invoke questions of federal versus state jurisdiction. *See Dale*, 386 F.3d at 785. Thus, the second sub-factor weighs against this Court's present exercise of jurisdiction.

Finally, as to the last sub-factor, there exists a close nexus between the underlying factual and legal issues, and state law and public policy. Plaintiff primarily seeks determinations of Tennessee contract and insurance law, and "Tennessee courts weigh policy considerations

9

heavily when interpreting insurance contracts." *State Auto. Mut. Ins. Co. v. Turner Funeral Home, Inc.*, No. 1:05-CV-61, 2006 WL 686872, at *5 (E.D. Tenn. Mar. 13, 2006) (citing *State Farm Fire and Cas. Co. v. White*, 993 S.W.2d 40, 43 (Tenn. Ct. App. 1998) ("The parties to an insurance policy are free to contract as they see fit as long as the parties remain within the bounds of the law, including public policy.")). Thus, in asking this Court to determine the rights, responsibilities, and legal relationships between State Farm and the River Breeze Defendants, Plaintiff also seeks an interpretation of Tennessee public policy. Although, as a result of diversity jurisdiction, a district court is sometimes required to make judgements of state policy, no overriding basis exists here for this Court to take on these issues. *See Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986) ("We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner."). Thus, both the third sub-factor and the fourth *Grand Trunk* in general factor weigh against the present exercise of jurisdiction.

5.

The fifth factor, very similar to the fourth, inquires whether a better, more effective remedy exists. In this case, the alternatives to this Court's present exercise of jurisdiction—staying the case and administratively closing it or dismissing it—are both effective solutions. They allow the Chancery Court to resolve the factual issues in the underlying case—a task to which it is highly suited. *See* Tenn. Code Ann. §§ 29-14-101 to 113. The chancery courts of Tennessee have long served as courts of equity—having jurisdiction over "all cases of an equitable nature, where the debt or demand exceeds fifty dollars." Tenn. Code Ann. § 16-11-103 (2015). The relief requested

in this case falls squarely within the jurisdiction and of the chancery court, *see* 3 Tenn. Prac. Rules of Civil Procedure Ann. § 2:4 (4th ed.) (citing W.H. Inman, *Gibson's Suits in Chancery*, 7th ed., 1988)), and the chancery court is already handling the state action. Thus, that court is well suited to decide the important policy implications involved in this case. *See Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943) ("It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states.") Accordingly, the fifth factor weighs against the present exercise of jurisdiction.

## *VI. REMEDY*

Having found that the *Grand Trunk* factors weigh against the exercise of jurisdiction at this time, the Court notes that it has two options: to dismiss the action or to stay the proceedings during the pendency of the Chancery litigation. *See Wilton*, 515 U.S. at 288. The Supreme Court has stated that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 515 U.S. 288 n. 2 (citing P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler, *The Federal Courts and the Federal System* 1451, n. 9 (3d ed. 1988)); *see also Aspen Specialty Ins. Co. v. Se. Title of Murfreesboro, LLC*, No. 3:13-01359, 2014 WL 2803701, at *5 (M.D. Tenn. June 20, 2014) (staying the declaratory judgment action pending the resolution of the underlying state action). Once a district court action is stayed, it may be closed administratively for statistical purposes. This is purely an administrative device for the convenience of the Court and does not affect the substantive or procedural rights of the parties in interest to proceed before

11

this Court at a later date.[2]  *See, e.g.*, *Moore v. Parris*, No. 1:14-CV-01162-JDB, 2015 WL 5564729, at *3-4 (W.D. Tenn. Sept. 21, 2015) (staying and administratively closing a petitioner's federal habeas corpus case pending the outcome of state court litigation).  Accordingly, the Court will stay and administratively close these proceedings, pending the outcome of the state action.[3]

### *VII. CONCLUSION*

For the reasons stated herein, the Court finds that the *Grand Trunk* factors weigh against the exercise of discretionary jurisdiction at this time.  Accordingly, this case is STAYED and ADMINISTRATIVELY CLOSED pending the outcome of the State action, 14-CV-396.

IT IS SO ORDERED this 25th day of February 2016.

                                        s/ J. DANIEL BREEN
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[2] An administratively closed case can be reopened by an order of the Court without the necessity of a new filing fee should the case require further action.

[3] The Court Clerk is directed to administratively close this case without prejudice to the right of any party in interest to later move to reopen the case for good cause.